# In the United States District Court
## for the Southern District of Georgia
### Augusta Division

TERESA SMITH,                         :        CIVIL ACTION

    Plaintiff,                    :

v.                                    :

AUGUSTA-RICHMOND COUNTY,              :

    Defendant.                    :        NO. CV107-103

## O R D E R

Plaintiff, Teresa Smith, filed the above-captioned case against Defendant, Augusta-Richmond County ("Augusta"), asserting race and sex discrimination claims arising out of her termination by Defendant, pursuant Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. §§ 2000e – 2000e-17, and related employment discrimination claims under the Civil Rights Acts of 1866 and 1871, codified at 42 U.S.C. § 1981 and § 1983.

Presently before the Court is Defendant's motion for summary judgment. Because Plaintiff has offered sufficient evidence that race or sex were motivating factors in her termination, the motion will be **DENIED** as to Plaintiff's Title VII claim. Because Plaintiff has offered credible evidence that a majority of the Board of Commissioners may

have terminated her because of her race or sex, the motion will be **DENIED** as to the § 1981 and § 1983 claims.

## BACKGROUND

Augusta is the consolidated government of the City of Augusta and Richmond County, Georgia. Smith, a black woman, was employed by Augusta as an engineer and department head from October 5, 1998, until her termination on December 19, 2005. Plaintiff was first hired as a pre-construction engineer by Augusta. Following the retirement of Jack Murphy, as the Director of Augusta's Public Works and Engineering Department, Smith applied for that position and, after a competitive hiring process, she was selected for the job in September 2000.

In March 2005, Augusta's Board of Commissioners voted to separate the Public Works and Engineering Department into three separate departments. Smith remained in charge of the Engineering Department, but no longer had responsibility for the two new departments, maintenance and solid waste.

On December 19, 2005, by a 6-3 vote of the Board of Commissioners, Smith was terminated. After Smith's termination, she was provided with severance pay through

2

March 3, 2006.  In April 2006, Smith became employed as the Director of Engineering in Richland County, located in Columbia, South Carolina.

Abie Ladson, a black man, was an engineer in Smith's department at the time of her termination.  After Smith was terminated, Ladson filled Smith's position on an interim basis.  Over a year later, after a competitive hiring process, Ladson was promoted to the position on a permanent basis.

According to Smith, she was told by Administrator George Kolb, a black man, that she needed to smile at the Commission more when she gave presentations to them, because they were not used to "someone like you being in that particular position."  Smith Dep. 90.  Like Smith, Kolb reported to the Commission. As Augusta's Administrator, Kolb was responsible for managing the day-to-day affairs of the local government.

Smith testified that she was told by Commissioner Don Grantham, a white man, that "they just didn't feel comfortable having someone like you over that department." Smith Dep. 95.   Smith posits that Commissioner Marion Williams, a black man, also suggested to Smith that certain white commissioners were trying to fire her.  Based on these

3

statements, Smith concluded that the white commissioners wanted to terminate her based on her race and/or sex.

In 2004, before Smith was terminated, local developers sent letters complaining about Smith's department, and Smith's job performance, to Smith, Augusta's Mayor, Administrator, and certain Commissioners.[1]  All but one of those letters were sent during a one week span in mid-November 2004.  Smith contends that two white Commissioners, Jimmy Smith and Don Grantham, solicited the complaints as part of a "witch hunt," in an effort to manufacture a false reason to fire her.

On March 25, 2004, Administrator George Kolb signed one of Smith's evaluation reports.  The evaluation reported that Smith did not meet expectations in the areas of "Providing Good Customer Service" and "Accomplishment of Annual Goals."  Smith Dep., Ex. 7.  Otherwise, Kolb reported that Smith's performance was above average.

---

[1] Plaintiff has challenged the admissibility of these letters, as hearsay, on summary judgment.  Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir. 1999).  Defendant has offered no rationale explaining why the documents are admissible.  However, the outcome of the instant motion does not depend on this evidentiary ruling.  Defendant has produced other evidence showing that the substance of the developers' complaints were voiced by others, most notably the commissioners themselves.  Dkt. 22, Ex. B., Bd. of Comm'rs Meeting Minutes, at 37 & 40 (describing project delays and staff recruiting problems as justifications for Smith's termination).

On October 13, 2005, the new Administrator, Fred Russell, a white man, completed another evaluation of Smith's performance, and stated that Smith did not meet expectations in the area of "Teamwork/Interpersonal Relations." Smith Dep., Ex. 8. Otherwise, Russell reported that Smith's performance was above average.

The Augusta-Richmond County Board of Commissioners consists of ten members, and a Mayor (who votes only if there is a tie). Of the ten regular members, five are elected from majority white districts, and five are elected from majority black districts. Half the commissioners are white, and half are black. Plaintiff has presented some evidence that the Commission's decisions often break along racial lines.[2]

At the December 19, 2005, Commission meeting, nine members were present. One black commissioner, Freddie Handy, was absent. The three commissioners who voted against Smith's termination were black: Marion Williams, Richard Colclough, and Betty Beard. Commissioners Williams and Colclough are men, and Commissioner Beard is a woman. Of the six commissioners who voted to terminate Plaintiff, one was a black man, Bobby Hankerson. Four of the other

---

[2] The Court does not imply that this fact, by itself, is unusual or unlawful.

AO 72A
(Rev. 8/82)

commissioners voting to terminate Smith were white men, Don Grantham, Jimmy Smith, Roy Rearden, and Andy Cheek.   The other commissioner voting to terminate Smith was a white woman, Barbara Sims.

During the meeting, Commissioner Cheek, Chairman of Engineering Services committee, stated that he had tried to work through Smith's difficulties with her, during nearly twenty separate work sessions.   Cheek concluded that, while Smith was a talented engineer, she was not a suitable manager.   Dkt. 22, Ex. B., Bd. of Comm'rs Meeting Minutes, at 40.

On June 16, 2006, Smith filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race and sex discrimination.   On April 24, 2007, the EEOC issued a notice of a right to sue upon Plaintiff's request because more than 180 days had elapsed since the date the Commission assumed jurisdiction over the charge.

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

6

affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor[,]" United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

## DISCUSSION

## A. Smith's Title VII Claims

Like most employment discrimination plaintiffs, Smith has produced no direct evidence of discrimination. As a result, the Court employs the familiar McDonnell Douglas burden-shifting framework to consider whether the circumstantial evidence relied on by Plaintiff states a cognizable claim for relief.

7

1. Employment Discrimination Principles

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court explained

> the basic allocation of burdens and order of
> presentation of proof in a Title VII case
> alleging discriminatory treatment.  First, the
> plaintiff has the burden of proving by the
> preponderance of the evidence a prima facie case
> of discrimination.  Second, if the plaintiff
> succeeds in proving the prima facie case, the
> burden shifts to the defendant "to articulate
> some legitimate, nondiscriminatory reason for the
> employee's rejection."   Third,   should   the
> defendant carry this burden, the plaintiff must
> then   have   an   opportunity   to   prove   by   a
> preponderance of the evidence that the legitimate
> reasons offered by the defendant were not its
> true   reasons,   but   were   a   pretext   for
> discrimination.

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)(internal citations omitted).

In Burdine, the Court clarified that when the burden shifts to the defendant, he need not prove by a preponderance of the evidence the existence of nondiscriminatory reasons for the adverse employment action.  Rather, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  Id. at 254. "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's

8

rejection." Id. at 255.  The defendant's explanation "must be clear and reasonably specific." Id. at 258.

In St. Mary's Honor Center v. Hicks, a racial discrimination suit under Title VII, the district judge, sitting as the trier of fact, rejected the employer's asserted reasons for demoting and discharging a black employee. The Eighth Circuit held that this finding entitled the employee to judgment as a matter of law.  The Supreme Court reversed, explaining that the trial court's finding did not mandate judgment in favor of the plaintiff.  Instead, the Court explained that, at all times, a Title VII plaintiff bears the ultimate burden of persuasion.  509 U.S. 502, 505–11 (1993).

In Reeves v. Sanderson Plumbing Products, Inc., the Supreme Court elucidated the plaintiff's burden in cases where the plaintiff establishes a prima facie case, the defendant asserts nondiscriminatory reasons for the employee's dismissal, and the plaintiff attempts to establish pretext.  530 U.S. 133, 141–49 (2000).  The Fifth Circuit held that, in addition to showing pretext, the employee also had to show, through additional evidence of discrimination, that the adverse employment action was motivated by the actual prohibited conduct asserted.  Id. at 139–40.

9

The Supreme Court rejected this "pretext-plus" approach.
Instead, the plaintiff can prove pretext by pointing to the
evidence establishing a prima facie case, along with
"sufficient" proof that the employer's legitimate reasons for
the termination are false.   The Supreme Court explained the
Fifth Circuit's error:

> In so reasoning, the Court of Appeals
> misconceived the evidentiary burden borne by
> plaintiffs who attempt to prove intentional
> discrimination through indirect evidence.   This
> much is evident form our decision in St. Mary's
> Honor Center.   There we held that the
> factfinder's rejection of the employer's
> legitimate, nondiscriminatory reason for its
> action does not compel judgment for the plaintiff
> . . . .   In reaching this conclusion, however, we
> reasoned that it is permissible for the trier of
> fact to infer the ultimate fact of discrimination
> from the falsity of the employer's explanation.

Id. at 146-47.

> In appropriate circumstances, the trier of fact
> can reasonably infer from the falsity of the
> explanation that the employer is dissembling to
> cover up a discriminatory purpose.   Such an
> inference is consistent with the general
> principle of evidence law that the factfinder is
> entitled to consider a party's dishonesty about
> a material fact as "affirmative evidence of
> guilt."

Id. at 147.

To determine whether the plaintiff has produced enough
evidence that the defendant's explanation is pretextual to
get the case to the jury, the court must consider all the

10

evidence of record, but the court cannot weigh the evidence or make credibility determinations. Rather, the trial court must draw all reasonable inferences in favor of the nonmoving party. Id. at 150-51.

Whether summary judgment is appropriate in any given employment discrimination action "depends on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's cause and that properly may be considered." Id. at 148-49. On a motion for summary judgment, or a motion for judgment as a matter of law, the Court must give proper regard to evidence supporting the employee's prima facie case and evidence undermining the employer's nondiscriminatory explanation. Id.

Under Title VII, as amended in 1991, an employment decision is unlawful if race or sex is a substantial, or "motivating" factor. Desert Palace, Inc. v. Costa, 539 U.S. 90, 93 (2003). The 1991 amendments, and Desert Palace, recognized a subtle, but important, reality in employment decisions -- they are not necessarily made on the basis of either a legitimate reason, or a discriminatory reason. Rather, employment decisions are often based on several

11

factors, some legitimate and others prohibited by law.   As will be discussed below, <u>Desert Palace</u>'s recognition of a claim based on a "mixed motives" decision can have considerable impact in cases involving multi-member decision-makers, like this one.   <u>See also</u> Michael I. Norton, et al., <u>Mixed Motives and Racial Bias</u>, Psychol. Pub. Pol'y & Law 47-49 (2006).


2. Application

i. Prima Facie Case

    Plaintiff maintains that she establishes a prima facie case of employment discrimination in this termination case because she (1) she belonged to a protected class, (2) she was qualified for the job, (3) she was terminated, and (4) the position remained unfilled.   <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 506; <u>Howard v. Roadway Express, Inc.</u>, 726 F.2d 1529, 1534-35 (11th Cir. 1984); <u>compare with</u> <u>Alexander v. Fulton County</u>, 207 F.3d 1303, 1339 (11th Cir. 2000)(in a failure to promote case, requiring the plaintiff to demonstrate that the promoted employee was not a member of the plaintiff's protected class).

12

To the contrary, Defendant insists that Plaintiff fails to make out a prima facie case of discrimination because she was replaced by a black man eventually, and Smith has not shown that Augusta treated similarly situated employees differently than her.

The McDonnell Douglas elements must be adapted flexibly to the facts of a given case. The elements of proof were never intended to be "rigid, mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978). Governing Supreme Court precedent provides that inferential proof can be provided in a number of ways, and the prima facie case is not "onerous." Burdine, 450 U.S. at 253-54; Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989), superceded on other grounds, as noted by CBOCS West, Inc. v. Humphries, 128 S. Ct. 1951, 1957 (2008). The required quantum of proof to establish a prima facie case is "infinitely less than what a directed verdict demands." St. Mary's Honor Ctr., 509 U.S. at 514.

McDonnell Douglas and St. Mary's Honor Center indicate that a prima facie case is established where the position remained unfilled after the plaintiff's termination, as occurred here. There is no dispute that Plaintiff meets the other three elements of her prima facie case. Smith has

13

established a prima facie case of discrimination. Thus, the burden of production shifts to Augusta to offer legitimate, nondiscriminatory reasons for Smith's termination. If Augusta points to such justifications, Smith bears the burden of showing that these justifications are just a smokescreen for unlawful discrimination. The Court will consider whether each party has discharged those burdens below.

ii. Legitimate Reasons and Proof of Pretext

Summary judgment can be appropriate in cases were the adverse employment decision is based on subjective criteria "if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Chapman v. AI Transport, Inc., 229 F.3d 1012, 1033 (11th Cir. 2000)(en banc). In other words, the subjective reason must be "capable of objective evaluation" to pass muster. Conner v. Fort Gordon Bus Co., 761 F.2d 1495, 1500 (11th Cir. 1985).

"Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman, 229 F.3d at 1030. To overcome a summary judgment motion, the plaintiff must offer evidence casting doubt on

14

each of the defendant's proffered nondiscriminatory reasons. Id. at 1037; Hinson v. Clinch County, Ga., Bd. of Educ., 231 F.3d 821, 830 (11th Cir. 2000).

Pretextual evidence demonstrates the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered" explanations. Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1538 (11th Cir. 1997). "Any believable evidence which demonstrates a genuine issue of fact regarding the truth of the employer's explanation may sustain the employee's burden of proof [to show pretext]." Steger v. Gen. Elec. Co., 318 F.3d 1066, 1076 (11th Cir. 2003). An employee can rebut an employer's proffered explanations with evidence of "prior treatment" of the plaintiff and "disturbing procedural irregularities[.]" Simms v. Oklahoma, 165 F.3d 1321, 1328 (10th Cir. 1999).

As mentioned above, under Title VII, as amended in 1991, an employer can be liable when it has "mixed motives." The former employee need only show that race or sex was a substantial, motivating factor leading to the termination. The claim does not fail because other, legitimate reasons may have also played a role in the decision-making process.

15

Augusta has offered several justifications supporting its decision to fire Smith.  Augusta asserts that Plaintiff (1) failed to ensure that projects were processed efficiently through her department, (2) failed to fill vacant positions in her department, (3) failed to improve low employee morale in her department, (4) was a micro-manager, (5) was tardy to meetings regularly, (6) violated the trust of commissioners, and (7) had a poor attitude.

The first four justifications are interrelated, and the Court will discuss these reasons together.[3]  Plaintiff has presented some evidence casting doubt on these four employer's rationales.  Plaintiff has presented evidence, including deposition testimony of employees of Defendant and former Commissioners (including one Commissioner that voted to terminate Plaintiff), that tend to show that these identified problems were the Commission's fault, not hers.

_____

[3] The final rationale is not worthy of any extended consideration. Where a defendant offers a subjective reason for an employment decision, it must offer "a clear and reasonably specific factual basis upon which it based [this] subjective opinion[,]" or the Court can disregard it. Chapman, 229 F.3d at 1033.  Augusta's suggestion that Smith had a poor attitude is, at turns, based on a rehashing of its other arguments (e.g., Smith's poor attitude caused low employee morale in her department), or too vague to allow the Court to credit it as a sufficient reason to support Smith's termination.

16

Smith has produced evidence showing that staffing shortages left her as the only licensed engineer qualified to give final approval to development plans. Smith, and others, testified that the Commission refused to offer a competitive salary to attract qualified candidates to fill the engineering positions in her department. Other evidence suggested that projects were not completed because the Commission let two senior, qualified engineers transfer out of her department within months after her selection as director. Smith posits, and a reasonable jury could find, that these facts led some individuals to conclude that Smith was a micro-manager, <u>inter alia</u>, without a full understanding of the relevant circumstances. In fact, Smith asserts that her department was placed at a disadvantage, and she was ultimately fired, because of her race or sex.

In addition, Smith blames the Commission for creating low employee morale in her department. Smith testified that these problems were caused by Commissioners meddling in her department, spreading rumors, and investigating her department without reason, not because of her leadership.

Commissioner Williams testified that Commissioner Grantham and Mayor Bob Young tried to get him to vote to remove Smith from her job, even though they admitted to him

17

that she had done nothing wrong.  Smith received above average performance evaluations, and Smith notes that she received "exceeds expectations" ratings in areas that conflict with Defendant's purported rationales for her termination.

Other, cumulative evidence of racial and sexual bias in the workplace tends to support Plaintiff's claim.  During Smith's deposition, she described the difficulty she encountered in receiving what should have been a routine pay raise.  According to Smith, the white male engineers working for Augusta received a standard raise when they became licensed professional engineers in Georgia.  When Smith sought such a raise after she received her state license, her request was turned down.  Eventually, Smith received a five percent raise.  Smith later learned that qualifying white men got a ten percent raise instead.

Smith also testified that, after she became director, her $4,500 a year car reimbursement allowance was rescinded by the Commission, without explanation or reason, but that other, white department heads did not suffer a similar fate. Smith offered other evidence of race or sex-based pay disparities.  Smith testified that, although she was the first licensed engineer to head her department, Augusta

18

offered to pay her significantly less than her white male predecessor. Other evidence indicates that Smith's successor was paid an annual salary of $110,000, when he took Smith's position on a permanent basis. In contrast, Smith earned $80,000, when she became director of the department, and $93,000, at the time she was fired.

The Court has discussed the principal bases in the record for Smith's termination, and concludes that Smith has offered sufficient evidence of pretext to allow a jury to consider her case. Two other reasons were cited by Augusta as factoring into the decision to fire Smith, and the Court will consider them at this time, although there is no evidence that either reason was widely known or relied on by the Commissioners when they voted to fire Smith.

Augusta faults Smith for being late to meetings regularly, including meetings with Georgia Department of Transportation officials. Dkt. No. 22, Ladson Aff. ¶ 5. Commissioner Smith estimated that Plaintiff was late about five times to such meetings over the course of a year. Relatedly, Commissioner Cheek testified that Smith was late to an interview with a potential hire. Tardiness is a legitimate reason for termination. Steger, 318 F.3d at 1076.

19

AO 72A
(Rev. 8/82)

Additionally, Cheek testified that Smith contradicted him in public and he lost trust in her because of it.  Cheek Dep. 55-57.  Smith responds that Cheek's loss of trust in her was a misunderstanding.  Id. at 56-57.  At least in this circuit, the relevant inquiry is whether the decision-maker honestly believed the reason offered for the termination, not whether the reason was true or correct.  Hawkins v. Ceco Corp., 883 F.2d 977, 980 n.2 (11th Cir. 1989); but see Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998). Because a "violation of trust" is a reason that might motivate a reasonable employer to terminate an employee, it is a legitimate reason.  Chapman, 229 F.3d at 1030.

Smith has not rebutted either of these reasons specifically -- she has not stated that she was never late, for example,[4] and it is difficult to understand how Smith could rebut Cheek's reason, unless she had some evidence of mendacity in his explanation.

---

[4] Smith has stated that she was never counseled or reprimanded for being late.  The Court notes that the circumstances surrounding these instances of tardiness have not been described adequately by either party.  It is unknown whether Smith was late because she was on official business, whether she had a good excuse, whether the lateness was considered a serious offense, et cetera.  This lack of detail could support a finding that the tardiness justification was not the real reason for her termination.  Chapman, 229 F.3d at 1033.

20

Yet, it is important to consider these justifications in context. Significantly, neither reason was offered as an explanation by any commissioner during the meeting on December 19, 2005. There is no evidence that any Commissioner other than Cheek was aware that Plaintiff "violated his trust." Nor is there evidence that Commissioners Smith or Cheek shared any concerns with other commissioners about Plaintiff's tardiness. In fact, there is no evidence in the record that either man ever offered Plaintiff's tardiness as a justification for their decision to fire Plaintiff.

Relatedly, leaving the votes of Smith and Cheek aside, four of the other seven members of the commission voted to fire her, without relying on either justification. Smith has offered evidence tending to cast doubt on the main reasons relied on by the commissioners for her termination, i.e., the extensive delays and regulatory burdens of attempting to build in Augusta, and the shortage of employees in the Engineering Department.

Smith has pointed to evidence from a number of witnesses (including Defendant's own employees) suggesting that the fault for these problems rested with the Commission, not Plaintiff. Smith and Cheek testified that no one had a

21

problem with her performance until certain new commissioners were elected in 2004. According to Smith, the genesis of the complaints from certain commissioners and local developers was that they were not used to someone enforcing the applicable codes, rules, and regulations on developers. Smith Dep. 325.

There is circumstantial evidence of race and sex discrimination present in this case, sufficient to allow a reasonable jury to find that Plaintiff's race or sex played a substantial role in her termination. Plaintiff has offered significant, contradictory evidence tending to show that the employer's legitimate, nondiscriminatory reasons may have been false, or at least not the only reason for her termination. The suspect timing of the complaints from local developers, and the repeated, admittedly ambiguous, comments made to Plaintiff by commissioners and other administrators, constitute impeaching evidence that cast doubt on the employer's true reasons for firing Smith.

"A jury question is created when a prima facie [case] is coupled with evidence sufficient to permit a reasonable fact finder to disbelieve an employer's proffered reasons for the challenged action." Combs, 106 F.3d at 1528.

22

Plaintiff has pointed to substantial evidence that her race or sex played a role in her termination.  If the jury credits Plaintiff's evidence, "but for" the racial animus of several Augusta commissioners, she would not have been terminated.  <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610 (1993).  Because there is evidence that race or sex played a role in Smith's termination, summary judgment is not warranted in Augusta's favor as to the Title VII claim.

## B. Section 1983 and Section 1981 Claims

There can be no § 1983 liability unless there is evidence that a <u>majority</u> of the Board of Commissioners acted with an unlawful purpose.  <u>Matthews v. Columbia County</u>, 294 F.3d 1294, 197-98 (11th Cir. 2002).

At least in the Eleventh Circuit, a plaintiff may invoke § 1983 simply to remedy an employment discrimination claim against a local government employer, even though the claim is otherwise cognizable under Title VII.  In other words, the plaintiff need not assert an independent claim under the constitution.  <u>Wu v. Thomas</u>, 863 F.2d 1543, 1547 n.9 (11th Cir. 1989); <u>compare with</u> <u>Day v. Wayne County Bd. of Auditors</u>, 749 F.2d 1199, 1204-05 (6th Cir. 1984).

23

In this case, Plaintiff is relying on the facts described above to establish that she was fired as part of an "official policy" of Augusta. That is, under <u>Matthews</u>, the Augusta Board of Commissioners possesses final decision-making authority, and Plaintiff submits that their decision was based on racial and sexual animus. Plaintiff cites the Fourteenth Amendment's equal protection clause in support of her § 1983 claim.

As discussed in the preceding section, if the jury credits the circumstantial evidence offered by Plaintiff, they could find that a majority of the Commissioners voted to terminate her because she was black or a woman. Accordingly, Plaintiff's § 1981 and § 1983 claims are not ripe for summary adjudication. <u>Brown v. City of Fort Lauderdale</u>, 923 F.2d 1474, 1481 (11th Cir. 1991); <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 733-36 (1989)(plurality op.); <u>Butts v. County of Volusia</u>, 222 F.3d 891, 894 (11th Cir. 2000)(finding that remedies for a § 1981 violation are coextensive with those provided by § 1983).

**CONCLUSION**

24

For the reasons described above, Defendant's motion for summary judgment is **DENIED**.   Dkt. No. 22.   The Clerk is directed to correct to docket to reflect that Defendant's proper name is "Augusta-Richmond County."   Dkt. No. 44 at 4.

**SO ORDERED**, this ___12th___ day of March, 2009.

_____

JUDGE,  UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)